UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24612-CIV-ALTONAGA/O'Sullivan

**SAMANTHA SPURGEON**,

    Plaintiff,
v.

**MARRIOTT INTERNATIONAL, INC.**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on the Defendants, Marriott International, Inc.; Starwood Hotels & Resorts Worldwide, Inc.; and W Hotel Management, Inc.'s Motion to Compel Arbitration and to Stay, or in the Alternative Dismiss, Plaintiff's Action [ECF No. 14], filed on January 9, 2017. Plaintiff, Samantha Spurgeon filed a Response in Opposition to the Motion . . . [ECF No. 18] on January 23, 2017; and Defendants filed a Reply in Support of Their Motion to Compel Arbitration [ECF No. 19] on January 30, 2017. The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I. BACKGROUND

**A. Factual History**

Spurgeon is a 52-year-old former Starwood employee, originally from the United Kingdom. She began her 22-year career with the company at a Starwood property in London in June 1992. (*See* Compl. ¶¶ 16, 23). The alleged conduct underlying Spurgeon's Complaint took place more recently — it began in 2014, a year or so after she resigned from positions at two Hawaiian resorts and transferred to a position within the Starwood network at the W South Beach Hotel (the "Hotel") in Miami Beach, Florida. (*See id.* at ¶¶ 19–20, 26–31).

Spurgeon relocated to Miami Beach in May 2013 to become the Hotel's Director of Sales & Marketing. (*See id.* at ¶¶ 17, 19, 20, 22). A year after her relocation to Miami, Defendants transferred a new General Manager from one of their other properties to the Hotel.[1] (*See id.* at ¶¶ 20, 26). Although Spurgeon had an exemplary employment record at Starwood spanning over two decades (*see id.* at ¶¶ 27–31), the new General Manager "targeted [Spurgeon] for termination" almost as soon as he arrived (*id.* at ¶ 31 (alteration added)). Spurgeon asserts he set unclear and unrealistic expectations for her, sometimes delegating work to her that was completely outside the scope of her departmental duties. (*See id.* at ¶¶ 48–49). He allegedly subjected her to constant criticism and provided her with poor performance reviews that were inaccurate and undeserved. (*See id.* at ¶¶ 34, 44–45, 47, 50).

The General Manager similarly targeted other members of the Hotel leadership team who, like Spurgeon, were over the age of 40. (*See id.* at ¶ 32). A few such individuals were forced to resign or were terminated shortly after the General Manager's transfer to the Hotel, and were replaced with younger individuals. (*See id.* at ¶¶ 32–33).

The alleged discrimination Spurgeon experienced related not only to her age, but also to her national origin. On one occasion in August 2014, Starwood's Senior Vice President of Operations berated Spurgeon during a budget meeting about her unsatisfactory approach to sales, implying it was the result of her "European mentality." (*Id.* at ¶¶ 37–38). Spurgeon complained to the General Manager and the Human Resources Department about the comment, but her complaint was not taken seriously and nothing was ever done to address it. (*See id.* at ¶¶ 39–41).

---

[1] A brief overview of Spurgeon's substantive allegations provides important context for the parties' arguments relating to the Motion — especially Defendants' argument that Marriott and W Hotel Management may compel arbitration as non-signatories to an arbitration agreement between Starwood and Spurgeon because Spurgeon's claims against them are "inextricably intertwined" with her claims against Starwood.

Instead, seemingly in response to the complaint, Spurgeon was "immediately" placed on a confusing Performance Improvement Plan that "attempted to mix and increase goals" and based itself on figures and sales numbers using a methodology different from any Spurgeon had seen in her two decades with the company. (*Id.* at ¶¶ 42–43).

Spurgeon took time off from work in July 2015 to deal with severe emotional distress she developed as a result of the targeted harassment and constant criticism. (*See id.* at ¶¶ 50–53). When she did so, Starwood cut off her email account and ceased all communications with her. (*See id.* at ¶ 54). Starwood officially terminated Spurgeon on July 20, 2015, when she tried returning to work after her leave of absence. (*See id.* at ¶ 55).

Spurgeon filed this action claiming Defendants: (1) harassed and discriminated against her on the basis of age and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e, *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. section 621, *et seq.*; and the Florida Civil Rights Act, Fla. Stat. section 760.01, *et seq.*; and (2) retaliated against her in violation of Title VII and the FRCA. (*See generally id.*).

Defendants' Motion asks the Court to compel arbitration pursuant to a "Mutual Agreement to Arbitrate" (the "Arbitration Agreement" or the "Agreement") [ECF No. 14-1] the parties executed in April 2013, shortly before Spurgeon began working at the Hotel. Defendants claim by signing the Arbitration Agreement, which Starwood enclosed with the offer letter it sent Spurgeon, Spurgeon agreed to submit "all disputes and claims" — including those asserted in this case — to binding arbitration. (*See* Mot. 2). In response, Spurgeon argues the Agreement she signed is not valid because its terms and the manner in which it was presented reflect "a level of deceptiveness that is unconscionable." (Resp. 6). Spurgeon also argues even if the Agreement *is* valid, Marriott and W Hotel Management may not compel arbitration because they

are non-signatories to the Agreement. (*See* Resp. 15–17). She asks the Court to deny the Motion, or in the alternative, to permit discovery on issues pertaining to validity of the Agreement. (*See id.* at 18).

### B. The Arbitration Agreement

The first paragraph of the Arbitration Agreement contains the following commitment to arbitrate:

> [Starwood] and I hereby agree that, except as otherwise provided herein, all disputes and claims for which a court otherwise would be authorized by law to grant relief, in any manner, that I may have, now or in the future, during or after my employment with Starwood, of any and every kind or nature whatsoever with or against Starwood, any of Starwood's affiliated or subsidiary companies, partners, joint venturers, owners of properties Starwood manages, and/or any of his, her, its or their directors, officers, employees or agents, or any disputes and claims that Starwood may have against me (collectively, "Claims"), shall be submitted to the American Arbitration Association ("AAA") to be resolved and determined through final and binding arbitration before a single arbitrator and to be conducted in accordance with the National Rules for the Resolution of Employment Disputes of the AAA.

(Agreement 2 (alteration added)).

Although this paragraph broadly encompasses "disputes and claims" of "every kind or nature whatsoever," a separate paragraph of the Agreement lists examples of claims that fall within its scope. (*Id.*) Among other claims, the list includes "any Claim of discrimination, retaliation, or harassment based upon age, . . . national origin, . . . or any other unlawful basis" that is brought "under any applicable federal, state, local or other statutes." (*Id.* (alterations added)). It specifically references claims brought under Title VII and the ADEA. (*See id.* at 2–3).

The Agreement also carves out exceptions for certain types of claims. For example, it excludes monetary disputes within the jurisdiction of a small claims court, as well as claims that are required by statute or benefit or pension plans to be submitted to an administrative forum.

(*See id.* at 3). It also excludes claims that "involve the alleged taking, use or disclosure of trade secrets and similar confidential or proprietary information" and claims "involving a failure to pay a retention bonus or relocation expense" (or "to repay any unearned portion" of such a bonus or expense). (*Id.*).

The Agreement contains multiple acknowledgments that the parties understand its terms, and they are "knowingly and voluntarily" waiving any and all rights they may have to bring covered claims in court before a judge or jury. (*Id.* 3–4). By its own terms, the Agreement survives the employer-employee relationship between Starwood and Spurgeon (*see id.* 3), and consistent with the scope outlined in the first paragraph, the Agreement notes that references to Starwood include "all of Starwood's affiliated entities, . . . and all successors and assigns of any of them" (*id.* at 2).

## II.  LEGAL STANDARD

"District courts consider three factors in reviewing a motion to compel arbitration: (1) [w]hether there is a valid written agreement to arbitrate; (2) [w]hether there is an arbitrable issue; and (3) [w]hether the right to arbitrate has been waived." *Dimattina Holidngs, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285, 1288 (S.D. Fla. 2016) (alterations added; internal quotation marks and citation omitted). Spurgeon does not deny her claims are arbitrable or claim a right to arbitrate has been waived; rather, she denies a valid arbitration agreement even exists. Consequently, resolution of the Motion turns on the first factor.

The Federal Arbitration Act, 9 U.S.C. section 1, *et seq.*, makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[2]  *Id.* at § 2.  "The FAA was enacted in 1925 in

---

[2] Agreements to arbitrate workplace disputes are covered under the FAA. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

response to widespread judicial hostility to arbitration agreements," and it "reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (alteration added; citations omitted). This means "courts must place arbitration agreements on equal footing with other contracts, . . . and enforce them according to their terms." *Id.* (alteration added; internal citations omitted). But it also means such agreements may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

"Although the FAA governs the applicability of arbitration agreements, state law governs issues 'concerning the validity, revocability, and enforceability of contracts generally.'" *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists." (alteration added; citation omitted)). Defenses such as fraud, unconscionability, and duress are governed by state law. *See Bhim*, 655 F. Supp. 2d at 1311. In this case, Spurgeon's claims arose in Florida, and the parties agree Florida law applies.

"The party opposing a motion to compel arbitration . . . 'has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration.'" *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004) (alteration added) (quoting *Aronson v. Dean Witter Reynolds, Inc.*, 675 F. Supp. 1324, 1325 (S.D. Fla. 1987)). "This burden is not unlike that of a party seeking summary judgment." *Id.* (internal quotation marks and citation omitted). "Therefore, the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and

6

affidavits which support its contention." *Id.* (internal quotation marks, citations, and alterations omitted).

### III. ANALYSIS

In opposing Defendants' request the Court compel arbitration, Spurgeon argues the Arbitration Agreement is not legally binding because it is unconscionable. She also asserts even if the Agreement is valid and enforceable, Marriott and W Hotel Management may not compel arbitration because they are not signatories to the Agreement. The Court addresses each argument in turn.

#### A. Whether the Arbitration Agreement is Unconscionable

Under Florida law, to support a finding of unconscionability sufficient to invalidate the Arbitration Agreement, Spurgeon must "establish *both* procedural and substantive unconscionability." *Premiere Real Estate Holdings, LLC v. Butch*, 24 So. 3d 708, 711 (Fla. 4th DCA 2009) (emphasis in original; citation omitted). Procedural unconscionability "relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999). Substantive unconscionability focuses on the agreement itself, and it exists where the terms "are so 'outrageously unfair' as to 'shock the judicial conscience.'" *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 40 (Fla. 4th DCA 2005) (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 285 (Fla. 1st DCA 2003)). Procedural and substantive unconscionability need not exist in equal amounts — one may "outweigh [the other] provided that there is at least a modicum of the weaker prong." *Id.* at 39 (alteration added; citation

omitted). For the reasons explained below, the Court finds the Agreement is neither procedurally nor substantively unconscionable.

    a. *Procedural Unconscionability*

In determining whether a contract is procedurally unconscionable, courts consider "(1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a 'take-it-or-leave-it' basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract." *Pendergast v. Spring Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010) (citations omitted). One issue bearing on this analysis is whether important terms in the agreement were "hidden in a maze of fine print and minimized by deceptive sales practices." *Powertel, Inc.*, 743 So. 2d at 574 (citation and internal quotation marks omitted).

Spurgeon argues these factors militate against compelling arbitration. She claims, for example, she was presented with the Agreement only after she had interviewed for and orally accepted Starwood's offer to relocate to Miami Beach and work at the Hotel. (*See* Resp. 8–9; *id.*, Ex. A, Declaration of Samantha Spurgeon ("Spurgeon Decl.") [ECF No. 18-1] ¶¶ 1–2). She further asserts the Agreement was provided to her on a "take it or leave it" basis, without a meaningful opportunity to negotiate its terms, and she feared the loss of her existing job with Starwood *and* the position she had just accepted if she did not sign it. (*See* Resp. 9; Spurgeon Decl. ¶¶ 6, 9–11). With regard to Spurgeon's ability and opportunity to understand the Agreement's terms, she notes despite being unfamiliar with arbitration and lacking a "sophisticated knowledge of legal terms," she was given just a short period of time to review, sign, and return the Agreement — which referenced, without explaining or even attaching, the

American Arbitration Association's National Rules for the Resolution of Employment Disputes. (*See* Resp. 9; Spurgeon Decl. ¶¶ 5, 7–8).

Defendants dispute Spurgeon's account of how the Agreement was entered into, and they question the factual basis for some of her claims. According to Defendants, Spurgeon has failed to articulate any facts to support her contention the Agreement could not be negotiated, emphasizing an employer's failure to tell an employee contractual terms are negotiable is not sufficient, in itself, to later establish the terms were, in fact, *not* negotiable. (*See* Reply 3). Defendants state Spurgeon's supposed fear of losing both her then-current job and the offer she had accepted, even if true, does not resolve the unconscionability question in her favor. (*See id.* at 5). Finally, Defendants contest Spurgeon's representations about her inability to understand the terms of the Agreement and the time frame she was given to do so. (*See id.* at 4–6).

The Court agrees with Defendants, and finds the circumstances under which Spurgeon signed the Agreement do not rise to the level of procedural unconscionability. As an initial matter, although Spurgeon stresses Starwood did not present her with the Agreement until after she had verbally accepted Starwood's offer, arbitration agreements are not somehow more dubious or subject to challenge by virtue of being entered into at this juncture. *See, e.g.*, *Echeverri v. P.S. Business Parks, L.P.*, No. 13-24525-CIV, 2014 WL 11961962, at *3 (S.D. Fla. Mar. 20, 2014) (compelling arbitration, and in doing so rejecting the plaintiff employee's argument the parties' arbitration agreement was procedurally unconscionable where the plaintiff was made to sign it on her first day of work, even though she "had already previously accepted the job"). In fact, it would be unusual for parties exploring a potential employer-employee relationship to consider the mechanism through which future disputes will be resolved before

agreeing in principle to some of the defining aspects of the employment relationship, such as title, salary, and benefits.

Spurgeon remembers the Agreement was given to her on a rushed, "take-it-or-leave-it" basis, and her job offer depended upon signing it. (*See* Resp. 9; Spurgeon Decl. ¶¶ 5–6, 9). Yet, Spurgeon does not articulate any specific reason she felt rushed, and the Court notes the offer letter Starwood sent Spurgeon in April 2013 does not convey any sense of urgency at all — it simply asked Spurgeon to review the details of the offer and reach out with any questions. (*See* Reply, Ex. 1, Declaration of Katherine Saborit [ECF No. 19-1] 4). Further, the letter even explained Spurgeon's offer was "contingent upon [her] execution of the Arbitration Agreement." (*Id.* at 6 (alteration added)).

While the letter is silent as to whether the terms of the Agreement were negotiable, the Agreement itself contains a capitalized acknowledgement each party had the "opportunity to discuss the agreement with personal legal counsel" and "used that opportunity to the extent desired." (Agreement 4). Spurgeon does not claim to have spoken to an attorney about the Agreement or to have made any attempt to negotiate its terms on her own behalf.[3] *See Mackler v. Fitness Int'l, LLC*, No. 16-80150-CIV, 2016 WL 7756623, at *4 (S.D. Fla. Apr. 22, 2016) (finding arbitration agreement was not procedurally unconscionable even though plaintiff employee was required to sign it to obtain employment, and noting the agreement "warn[ed] [plaintiff] in bold" it affected his rights and he therefore "may wish to seek legal advice" before

---

[3] Even if the Court were satisfied the Agreement was truly non-negotiable, Spurgeon has failed to show, and has not asserted, she lacked employment alternatives to Starwood. *See Bhim*, 655 F. Supp. 2d at 1315 (finding arbitration agreement was not procedurally unconscionable, reasoning in part "even if the [agreement] was presented on a 'take it or leave it' basis, [plaintiff employee] has not shown that she lacked employment alternatives to [defendant employer] in the event that she chose to 'leave it'" (alterations added)); *Ware Else, Inc. v. Ofstein*, 856 So. 2d 1079, 1082 (Fla. 5th DCA 2003) (noting "the vast majority of employment agreements are take-it-or-leave-it propositions" and "if [plaintiff employee] did not like the terms of the agreement, she could indeed have left it" (alterations added)).

signing it (alterations added)). Nor does Spurgeon claim to have tried unsuccessfully to obtain the relevant AAA rules.

To be sure, there was disparity in bargaining power between Starwood and Spurgeon, the extent of which was perhaps enhanced by Spurgeon's status as a Starwood employee when they were discussing the opportunity to work at the Hotel. But "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements [are unenforceable]." *Caley*, 428 F.3d at 1377 (first alteration added; second and third alteration in original; internal quotation marks omitted) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32–33 (1991)). The relevant consideration is how any such disparity manifested itself. Here, the Arbitration Agreement is not oppressive, and far from being hidden in a "maze of fine print," Spurgeon's commitment to arbitrate is set forth in a stand-alone three-page contract. *See id.* at 1377 (finding dispute resolution agreement was not procedurally unconscionable because "[i]ts terms [were] clear and were presented to employees with a cover letter reflecting the importance of the policy, and its terms [were] not oppressive" (alterations added)). Further, the terms of the Agreement are straightforward and easy for a director-level employee like Spurgeon to understand; to the extent there is any ambiguity in the Agreement, it certainly does not relate to the causes of action in Spurgeon's Complaint, which the Agreement specifies are within its scope.

    b. *Substantive Unconscionability*

Because both procedural *and* substantive unconscionability must be present to find an arbitration agreement unenforceable, *see Butch*, 24 So. 3d at 711, Spurgeon's failure to establish procedural unconscionability forecloses her unconscionability argument. But although it is a closer question, Spurgeon's argument that the Arbitration Agreement is substantively

unconscionable also falls short, and it is worth briefly explaining why. Substantive unconscionability turns on the agreement itself, considering whether the disputed terms "limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." *Henry v. Pizza Hut of Am., Inc.*, No. 07-01128-CIV, 2007 WL 2827722, at *4 (M.D. Fla. Sept. 27, 2007) (quoting *U.S. EEOC v. Taco Bell of Am., Inc.*, No. 06-001792-CIV, 2007 WL 809660, at *1 (M.D. Fla. Mar. 15, 2007)).

Spurgeon's primary argument in this regard is Starwood's obligations under the Agreement are illusory because despite being titled a "Mutual Agreement to Arbitrate," a closer look reveals Spurgeon is the only party required to forego judicial resolution of her claims. (Resp. 9–14). In other words, Spurgeon asserts under the Agreement, "Starwood retains the right to sue Spurgeon, but shield from public eye . . . her claims against them [sic]." (*Id.* at 12 (alteration added)). In support of this position, Spurgeon references a section of the Agreement she believes carves out the types of claims Starwood would have against her. (*See id.*).

The Court acknowledges the Agreement's exclusion of claims "involv[ing] the alleged taking, use or disclosure of trade secrets and similar confidential or proprietary information" encompasses a large and important category of claims Starwood could realistically raise against its employees. Florida courts have held "[w]here one party is bound to arbitration of its claims but the other is not, there can be some substantive unconscionability." *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 992 (Fla. 4th DCA 2004) (alteration added; citation omitted). But the exclusion clause does not encompass *all* of Starwood's potential claims, and even if it did, one-sided arbitration agreements are not *necessarily* infected with substantive unconscionability — courts must look at the agreement as a whole. *See, e.g.*, *Tranchant v. Ritz*

*Carlton Hotel Co., LLC*, No. 10-00233-CIV, 2011 WL 1230734, at *6 (M.D. Fla. Mar. 11, 2011) (upholding a one-sided arbitration provision because it was limited in scope, did not require plaintiff to surrender claims or damages he could have sought in court, did not impose substantial costs on plaintiff, and provided for discovery consistent with the arbitral rules governing the agreement); *Avid Eng'g, Inc. v. Orlando Marketplace, Ltd.*, 809 So. 2d 1, 5 (Fla. 5th DCA 2001) (upholding a one-sided arbitration provision, reasoning it was not substantively unconscionable because it "[did] not require [plaintiff-appellee] to surrender any of its claims or damages that it could seek in court," but "merely substitute[d] the forum for deciding those claims and damages" (alterations added)).[4]

Spurgeon claims the terms of the Agreement reflect Starwood's attempt to create an unfair advantage over her and argues the Agreement is in fact so unfair it should "shock the judicial conscience." (Resp. 12–14). Having reviewed the Agreement, the Court's conscience is not shocked. For one, the Agreement carves out important categories of claims employees could

---

[4] According to Spurgeon, the alleged lack of mutuality shows not only the Arbitration Agreement's substantive unconscionability, but also lack of consideration. This argument is also without merit, but for a different reason. Under Florida law, "mutual promises to arbitrate are not the only form of consideration sufficient to support an arbitration provision." *Tranchant*, 2011 WL 1230734, at *4. To the contrary, "consideration can be established by performance or a promise to perform," *id.* (citation omitted), and "[a] promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005) (alteration added; citation omitted). Spurgeon specifically alleges she considered the opportunity at the Hotel to be a "'promotion' . . . at a higher salary." (Compl. ¶ 28 (alteration added)). By signing the Agreement, she acknowledged the Agreement was "in consideration of Starwood's employment, transfer, *or promotion*" of her. (Agreement 3 (emphasis added)). This consideration is sufficient to support her commitment to arbitrate. *See Schwalier*, 901 So. 2d at 309 (finding trial court erred in denying defendant employer's motion to compel arbitration, and explaining defendant's promises of "continued employment, increased pay and benefits" were sufficient consideration for arbitration agreement); *Tranchant*, 2011 WL 1230734, at *4 (finding defendant employer's continued employment of plaintiff to be sufficient consideration for employment agreement and arbitration provision contained therein); *see also Bhim*, 655 F. Supp. 2d at 1313 (noting although the parties' mutual promises to arbitrate provided sufficient consideration for the arbitration agreement, "[plaintiff] received additional consideration . . . in the form of her continued employment at [defendant store]" (alterations added)).

potentially have against Starwood, as well, including monetary claims within the jurisdiction of a small claims court and claims involving a failure to pay a retention bonus or relocation expense. (*See* Agreement 3). But more importantly, by committing to arbitration, Spurgeon was not required to forego any claim or remedy — the Agreement specifically provides the arbitrator with the "authority to award equitable relief, damages, costs, and fees to the extent permitted by law, including, but not limited to, any remedy or relief that a governing court might order." (*Id.* at 2). Nor does the Agreement handicap Spurgeon's ability to build and present her case — it provides for "adequate discovery," including "reasonable access to essential documents and witnesses as determined by agreement or the arbitrator," and it states each party "shall be entitled to present evidence and examine and cross-examine witnesses." (*Id.*) For these reasons, the Arbitration Agreement is valid and enforceable.[5]

### B. Whether Marriott and W Hotel Management May Compel Arbitration

As noted, Spurgeon objects to Defendants' claim that Marriott and W Hotel Management are entitled to compel arbitration pursuant to the Arbitration Agreement despite being non-signatories. Specifically, Spurgeon challenges the argument that these two Defendants may compel arbitration on the ground that Spurgeon's allegations against them are "inextricably intertwined" with her allegations against Starwood. (*See* Resp. 16). Spurgeon also disagrees that Defendants should be permitted to compel arbitration as third-party beneficiaries of the Agreement, emphasizing Defendants' failure to provide affidavits or declarations elucidating their exact relationship to Starwood. (*See id.* at 15).

---

[5] The fairness of the Arbitration Agreement is further underscored by the provision making Starwood responsible for the majority of arbitration costs. Spurgeon must pay the initial AAA filing fee of up to a maximum of $125, but Starwood is responsible for all arbitrator compensation, as well as any filing or administrative fees in excess of the $125. (*See* Agreement 2).

Spurgeon is correct in noting non-signatories to an arbitration agreement generally may not compel signatories to arbitrate pursuant to that agreement under Florida law. *See Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 943 (Fla. 1st DCA 2004). However, there are exceptions to this rule, one of which is the doctrine of equitable estoppel. *See Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 969 (Fla. 3d DCA 2010). This doctrine recognizes "[a] non-signatory . . . may compel arbitration when the allegations against him are inextricably intertwined with or mirror those against a signatory, or when the allegations are of interdependent and concerted misconduct between a non-signatory and a signatory." *Dimattina Holdings, LLC*, 195 F. Supp. 3d at 1292 (citations omitted; alterations added).

Although Spurgeon recognizes this exception, she fails to offer any convincing reason why it should not be applied in this case, and the Court is not aware of any. Spurgeon's claims against all three Defendants are inextricably intertwined because, as set forth in the Background section above, they rely on a single set of factual allegations. Tellingly, all six counts of Spurgeon's Complaint refer to the "Defendants" collectively rather than naming Starwood, Marriott, or W Hotel Management individually. *See Dimattina Holdings*, 195 F. Supp. 3d at 1292 (compelling arbitration where the claims against the signatory and non-signatory were "one and the same," and because plaintiff "repeatedly refer[red] to their actions collectively" (alteration added)). Indeed, Spurgeon even alleges Marriott's purchase of Starwood and W Hotel Management in September 2016 had the effect of "merging the companies." (Compl. ¶ 21). Because of her own admissions, the Court finds Spurgeon is equitably estopped from avoiding arbitration with Marriott and W Hotel Management. *See Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012) (affirming district court's finding non-

signatory could be compelled to arbitrate on equitable estoppel grounds where plaintiff's claims against signatory and non-signatory defendants were "inextricably intertwined").[6]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 14]** is **GRANTED** as follows:

1. Arbitration of Spurgeon's claims is compelled in accordance with the Arbitration Agreement and the FAA.

2. This case is **STAYED** pending arbitration.

3. The Clerk is directed to administratively **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida this 7th day of March, 2017.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[6] The Court need not, and therefore does not, reach the question of whether Marriott and W Hotel Management are also entitled to compel arbitration as third-party beneficiaries of the Agreement or whether Plaintiff should be allowed discovery. The Court notes, however, that in opposing this argument Spurgeon contests whether Defendants have established that Marriott and W Hotel Management are affiliates of Starwood, even though she relied upon them being affiliates for purposes of bringing this action.